MOHAMMAD NASIR KOHISTANI
9140 Skokie Boulevard, Unit 3E
Skokie, IL  60077,

    Plaintiff,

ZURICH AMERICAN INSURANCE COMPANY
1299 Zurich Way                                **Case Number:  2026 CV _____**
Schaumberg, IL  61096,

    Involuntary Plaintiff,

    v.

MENARD, INC., a Domestic Company
5101 Menard Drive
Eau Claire, WI  54703-9604,

and

SHANGHAI LONGJIE PLASTICS CO., Ltd.,
a Foreign Company,
Room 709, Yedi Business Park
No. 695 Huilong Road
Xujing Town, Qingpu District, Shanghai

and

HARTFORD UNDERWRITERS INSURANCE
COMPANY, a Domestic Stock Company
One Hartford Plaza
Hartford, CT  06155,

and

SUZHOU LANGJIAN PLASTIC TECHNOLOGY
CO., LTD.
Dongxing Village, Leyu Town, Zhangjagang City
People's Republic of China,

    Defendants.

# COMPLAINT

NOW COMES Plaintiff, MOHAMMAD NASIR KOHISTANI, through his attorneys SOFIA ZNEIMER of ZNEIMER & ZNEIMER PC. and STEVEN T. CAYA, EVAN B. TENEBRUSO and JOHN P. CAUCUTT of NOWLAN LAW LLP, as and for his Complaint alleges as follows:

## PARTIES

### PLAINTIFF

1. Plaintiff MOHAMMAD NASIR KOHISTANI is a natural person and citizen of the State of Illinois, who resides at 9140 Skokie Boulevard, Unit 3E, Skokie, Illinois 60077.

2. Involuntary Plaintiff ZURICH AMERICAN INSURANCE COMPANY ("ZURICH"), is a foreign insurance company incorporated under the laws of the State of New York, with its principal executive place of business and U.S. headquarters located at 1299 Zurich Way, Schaumburg, Illinois 60196; for the purposes of diversity jurisdiction, Zurich is a citizen of Illinois.

3. Upon information and belief, ZURICH provided occupational injury coverage to Mohammad Kohistani and paid wage loss and medical benefits arising out of the occurrence alleged in this Complaint; as a result of said payments, ZURICH may claim a right of reimbursement and/or subrogation and, therefore, is a necessary and proper party to this action.

### DEFENDANTS

4. Defendant MENARD, INC. ("MENARD") is a corporation formed under the laws of the State of Wisconsin with its principal place of business located at 5101 Menard Drive,

Eau Claire, Wisconsin 54703-9604; for the purposes of diversity jurisdiction, MENARD is a citizen of the State of Wisconsin.

5.  Defendant SHANGHAI LONGJIE PLASTICS CO., LTD ("SHANGHAI") is a foreign corporation formed under the laws of the People's Republic of China with a principal place of business is located at Room 709, Yedi Business Park, No. 695 Huilong Road, Xujing Town, Qingpu District, Shanghai, whose registered agent for service of process is Liu Guozhang, Room 307, Section X, 3rd Floor, Building 1, No. 9138 Beiqing Road, Qingpu District, Shanghai; for the purposes of diversity jurisdiction, SHANGHAI is a foreign corporation and citizen of the Peoples Republic of China.

6.  Defendant HARTFORD UNDERWRITERS INSURANCE COMPANY ("HARTFORD"), is a foreign insurance company incorporated in Connecticut whose principal place of business is located at One Hartford Plaza, Hartford, Connecticut 06155 and whose registered agent for services of process in Wisconsin is CT Corporation System, 301 S. Bedford Street, Suite 1, Madison, Wisconsin 53703; for the purposes of diversity jurisdiction, HARTFORD is a citizen of the State of Connecticut.

7.  Upon information and belief, HARTFORD issued a policy of liability insurance to SHANGHAI that provides coverage for the occurrence alleged in this Complaint; pursuant to the Wisconsin Direction Action Statute, HARTFORD is a proper party to this action.

8.  Defendant SUZHOU LANGJIAN PLASTIC TECHNOLOGY CO., LTD. ("SUZHOU") is a foreign corporation formed under the laws of the People's Republic of China with a principal place of business in Dongxing Village, Leyu Town, Zhangjagang City, People's Republic of China; for the purposes of diversity jurisdiction, SUZHOU is a foreign corporation and citizen of the People's Republic of China.

# JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1332, because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states and citizens of a foreign state.

10. This Court has personal jurisdiction over MENARD as MENARD is a Wisconsin Corporation with its principal place of business located in Wisconsin and, therefore, for the purposes of diversity jurisdiction is a Wisconsin Citizen.

11. This Court has personal jurisdiction over SHANGHAI pursuant to Wis. Stat. § 801.05(d), because it caused tortious injury in Wisconsin by an act or omission outside the state, it regularly does business and engages in a persistent course of conduct in Wisconsin, and it derives substantial revenue from goods used or consumed in Wisconsin.

12. This Court has personal jurisdiction over HARTFORD pursuant to Wis. Stat. § 801.05(2) and Wis. Stat. § 632.24 because HARTFORD issued liability insurance to SHANGHAI that provides coverage for the occurrence alleged in this Complaint, Plaintiff asserts a direct action claim against HARTFORD and HARTFORD is a citizen of the State of Connecticut for the purposes of diversity jurisdiction.

13. This Court has person jurisdiction over SUZHOU pursuant to Wis. Stat. §801.05(d), because it caused tortious injury in Wisconsin by an act or omission outside the state, it regularly does business and engages in a persistent course of conduct in Wisconsin, and it derives substantial revenue from goods used or consumed in Wisconsin.

# STATEMENT OF FACTS

14. At all relevant times, MOHAMMAD NASIR KOHISTANI was an independent contractor hired by 4M Transportation to deliver goods and products to MENARD.

4

15. For approximately three years before May 23, 2023, 4M Transportation, Inc. regularly dispatched MOHAMMAD NASIR KOHISTANI To deliver sealed containers to Defendant MENARD.

16. During that period, MOHAMMAD NASIR KOHISTANI made approximately 200 deliveries to MENARD's Crossdock facility in Iron Ridge, Wisconsin.

17. On or about May 23, 2023, 4M Transportation, Inc. dispatched MOHAMMAD NASIR KOHISTANI to deliver sealed intermodal container HLBU2873019 to MENARD's Crossdock facility in Iron Ridge, Wisconsin.

18. On May 23, 2023, MOHAMMAD NASIR KOHISTANI made that scheduled delivery to MENARD's Crossdock facility located at W3247 County Road S, Iron Ridge, Wisconsin.

19. The May 23, 2023 shipment consisted of PVC fence materials manufactured by Defendant SHANGHAI and shipped from the People's Republic of China in an intermodal container HLBU2873019 under seal HLG5810213.

20. The cargo weighed approximately 8,738.35 kilograms and consisted of twenty one packages, each weighing approximately 416 kilograms, or 917 pounds.

21. The container's load was secured by plastic air bags, also called nylon bubbles or dunnage, along the sides of the boxes, and nothing in the front of the container prevented forward movement.

22. On information and belief, Defendant SHANGHAI loaded and sealed the intermodal container HLBU2873019 under seal HLG5810213.

23. When MOHAMMAD NASIR KOHISTANI arrived at the MENARD facility on May 23, 2023, MENARD personnel instructed him to unseal and open the container and secure

5

the doors while still in the yard because the facility could not open the container doors at the dock.

24. In the alternative, Defendant SUZHOU loaded and sealed the intermodal container HLBU2873019 under seal HLG5810213.

25. MENARD required drivers, including MOHAMMAD NASIR KOHISTANI, to unseal and open container doors in the yard before backing into a dock.

26. MENARD required MOHAMMAD NASIR KOHISTANI to open the doors before providing a dock, which forced him to open the doors while the container floor sat approximately 4.5 feet above him on the truck rather than at dock level.

27. MENARD did not provide or require safety equipment, such as a forklift, a safety frame, or a barrier positioned in the door plane while MOHAMMAD NASIR KOHISTANI cracked the doors.

28. Before May 23, 2023, MOHAMMAD NASIR KOHISTANI experienced two near-miss events in Indiana and Ohio involving similar loads, where forward-shifted cargo nearly struck him when he opened container doors at MENARD locations.

29. MOHAMMAD NASIR KOHISTANI notified MENARD about those prior events.

30. On May 23, 2023, MOHAMMAD NASIR KOHISTANI opened and secured the right container door. Because of the package size, he could see only part of the load, and it appeared to sit in a normal position.

31. When MOHAMMAD NASIR KOHISTANI opened the left container door, the door burst open, struck him, and knocked him to the ground.

32. A crate weighing approximately 416 kilograms, or 917 pounds, fell from the container from a height of approximately 4 to 4.5 feet and landed on MOHAMMAD NASIR KOHISTANI, pinning him beneath it.

33. MOHAMMAD NASIR KOHISTANI lost consciousness at the scene and remained trapped until others lifted the crate off him.

34. As a result of the incident, MOHAMMAD NASIR KOHISTANI sustained catastrophic injuries, including spinal injuries, closed head injury, leg injuries, meniscal tear, deep vein thrombosis, shoulder rotator cuff tear, complex regional pain syndrome, and other injuries.

35. MOHAMMAD NASIR KOHISTANIf continues to experience chronic pain and functional limitations and requires ongoing medical treatment and therapy with medical bills to date exceeding $350,000.00.

## **CLAIMS FOR RELIEF**

## **COUNT I – AGAINST MENARD, INC.**
### **Negligence**

36. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

37. Defendant MENARD owned, occupied, and controlled the Crossdock facility in Iron Ridge, Wisconsin, including the yard and the manner in which yard and unloading operations occurred.

38. MOHAMMAD NASIR KOHISTANI entered MENARD's premises to make a delivery as a business invitee and lawful frequenter.

39. Defendant MENARD owed MOHAMMAD NASIR KOHISTANI a duty to exercise ordinary care to keep the premises and unloading operations reasonably safe.

40. As the owner and operator of the facility, Defendant MENARD owed MOHAMMAD NASIR KOHISTANI, a business invitee, a duty to exercise ordinary care in its business operations, including implementing safe procedures for opening sealed container doors during deliveries.

41. MENARD knew, or in the exercise of ordinary care should have known, that sealed intermodal containers delivered to its facility could contain heavy cargo that had shifted.

42. MENARD knew, or in the exercise of ordinary care should have known, that shifted cargo could fall from a sealed container when a driver opened the doors.

43. MENARD knew that packages weighing 900 pounds or more could fall during door opening.

44. MENARD required drivers, including MOHAMMAD NASIR KOHISTANI, to unseal and open sealed container doors in the yard before backing into a dock.

45. When MOHAMMAD NASIR KOHISTANI opened the doors in the yard, the container floor sat approximately 4 to 4.5 feet above ground level.

46. Opening the doors at that elevation exposed Plaintiff to the risk that heavy cargo would fall from the container from a height.

47. MENARD did not provide or require a dock-controlled setting, trailer restraint, or other means to control the hazard before requiring door opening.

48. MENARD did not provide or require safety equipment or engineering controls for door opening in the yard, including a forklift, safety frame, or barrier in the door plane.

49. Before May 23, 2023, MOHAMMAD NASIR KOHISTANI reported to MENARD, prior near-miss incidents at MENARD locations where shifted cargo nearly struck him during door opening.

50. MENARD knew, or in the exercise of ordinary care should have known, that requiring door opening in the yard without a dock-controlled setting created a dangerous unloading condition.

51. MENARD breached its duties by one or more of the following acts and omissions:

   a. Failed to provide or require safety equipment or engineering controls for safe door opening, including a forklift, a safety frame, or a barrier positioned in the door plane.

   b. Failed to implement and enforce safe door opening protocols for sealed containers, including controlled door opening, hazard assessment for shifted cargo, and staging before MOHAMMAD NASIR KOHISTANI entered the door plane.

   c. Instructed MOHAMMAD NASIR KOHISTANI to unseal and open the sealed container doors in the yard rather than at dock level, without first securing the trailer at a dock or otherwise controlling the hazard of shifted cargo.

   d. Failed to provide a controlled location for door opening of containers with heavy packages, including a dock, dock leveler, and or trailer restraint, before requiring MOHAMMAD NASIR KOHISTANI to open the container doors.

   e. Failed to require reasonable communication and safety requirements for inbound shippers and carriers, including failing to request or require that the shipper load and secure cargo to prevent forward movement and to provide adequate blocking, bracing, or equivalent securement for heavy packages.

   f. Allowed unloading operations to proceed in the yard without dock level controls or equivalent safety measures despite a foreseeable and preventable risk that heavy cargo would fall from the container.

g. Failed to inspect or evaluate the container and trailer for signs of load shift or unsafe loading before directing MOHAMMAD NASIR KOHISTANI to open the doors in the yard.

h. Failed to train and supervise personnel responsible for yard and dock operations to identify shifted load hazards and to require dock level opening or equivalent controls before drivers opened sealed container doors.

i. Maintained an unsafe method of operation for deliveries by routinely requiring drivers to open sealed container doors in the yard rather than under dock-controlled conditions.

52. Defendant MENARD knew or should have known of the hazard, including from two prior near-miss load-fall incidents reported to Defendant MENARD, yet failed to correct or guard against the danger.

53. Defendant MENARD's negligence in failing to correct the dangerous unloading condition was a substantial factor in causing MOHAMMAD NASIR KOHISTANI's injuries and damages.

54. As a direct and proximate result of Defendant MENARD's negligence, MOHAMMAD NASIR KOHISTANI suffered severe and permanent injuries, incurred substantial medical expenses, endured pain and suffering, and sustained other damages as described herein.

## **COUNT II: AGAINST SHANGHAI LONGJIE PLASTICS CO.**
## **Negligence**

55. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 54 as if fully set forth herein.

55. Defendant SHANGHAI manufactured, assembled, packaged, and or supplied PVC fence materials in containers for delivery to Defendant MENARD in Wisconsin,

56. Defendant SHANGHAI manufactured, assembled, packaged, and or supplied PVC fence materials shipped in a sealed container HLBU2873019 for delivery to MENARD in Wisconsin.

57. Defendant SHANGHAI had a duty to exercise ordinary care to package, unitize, load, block, brace, and secure the PVC fence materials in a manner that prevented load shift and prevented cargo loss during ordinary and foreseeable transportation, door opening, and unloading.

58. Federal cargo securement regulations and standards reflect the duty of reasonable care, including the requirements that cargo be loaded to prevent cargo loss, that cargo be secured to prevent shifting, and that cargo be firmly secured using appropriate securement methods.

59. Notwithstanding its duty, Defendant SHANGHAI breached its duty by one or more of the following acts or omissions:

- a. Failed to load and secure the PVC fence materials in a manner that prevented the cargo from shifting during ordinary transportation and unloading.
- b. Failed to use adequate blocking and bracing inside the container to prevent forward movement of the crated, palletized load.
- c. Failed to use any front blocking, bracing, or restraint capable of stopping forward movement toward the container doors.
- d. Relied on side airbags or side dunnage without installing a front restraint or other securement that prevented forward movement and release when the container doors opened.
- e. Failed to unitize, stabilize, or otherwise secure the crates and pallets so they functioned as a stable load during transport and door opening.
- f. Failed to use securement methods that firmly secured the cargo and prevented shifting, as reflected in federal cargo securement standards.

11

      g. Failed to inspect or verify the adequacy of the blocking, bracing, and securement before releasing the container for transport.

      h. Failed to provide adequate instructions, warnings, or notice to downstream handlers that the cargo could have shifted and could eject upon door opening, and failing to advise any controlled door opening procedure.

      i. Created a concealed and unreasonably dangerous condition that an unloading worker could not discover by ordinary observation before opening the container doors.

      j. Was otherwise negligent in failing to exercise ordinary care under the circumstances.

60. One or more of these breaches caused the load to shift and eject when MOHAMMAD NASIR KOHISTANI opened the container door.

61. Defendant's breach caused MOHAMMAD NASIR KOHISTANI's injuries.

62. Defendant SHANGHAI knew or should have known that improper securement can create a latent and concealed hazard that an unloading worker may not discover by ordinary observation before door opening.

63. To the extent any Defendant contends that a driver or handler should have inspected the cargo securement before transport or unloading, federal standards recognize circumstances where cargo inspection is impracticable for a sealed load. See 49 CFR 392.9(b)(4).

64. Ordinary care required Defendant SHANGHAI to eliminate that hazard through proper loading and securement.

65. Defendant SHANGHAI's negligent packaging, loading, and securement was a substantial factor in causing the load to shift and release when the doors opened and in causing MOHAMMAD NASIR KOHISTANI's injuries.

12

66. As a direct and proximate result of Defendant SHANGHAI's negligence, MOHAMMAD NASIR KOHISTANI suffered severe and permanent injuries, incurred medical expenses, endured pain and suffering, and sustained other damages as described herein.

67. Pursuant to the policy of insurance issued by HARTFORD to SHANGHAI, HARTFORD is liable to Plaintiffs for all of their injuries and damages.

## COUNT III: AGAINST SUZHOU LANGJIAN PLASTIC TECHNOLOGY CO., LTD.
### Negligence

68. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 67 as if fully set forth herein.

69. Defendant SUZHOU manufactured, assembled, packaged, and or supplied PVC fence materials in containers for delivery to Defendant MENARD in Wisconsin,

70. Defendant SUZHOU manufactured, assembled, packaged, and or supplied PVC fence materials shipped in a sealed container HLBU2873019 for delivery to MENARD in Wisconsin.

71. Defendant SUZHOU had a duty to exercise ordinary care to package, unitize, load, block, brace, and secure the PVC fence materials in a manner that prevented load shift and prevented cargo loss during ordinary and foreseeable transportation, door opening, and unloading.

72. Federal cargo securement regulations and standards reflect the duty of reasonable care, including the requirements that cargo be loaded to prevent cargo loss, that cargo be secured to prevent shifting, and that cargo be firmly secured using appropriate securement methods.

73. Notwithstanding its duty, Defendant SUZHOU breached its duty by one or more of the following acts or omissions:

    k. Failed to load and secure the PVC fence materials in a manner that prevented the cargo from shifting during ordinary transportation and unloading.

    l. Failed to use adequate blocking and bracing inside the container to prevent forward movement of the crated, palletized load.

    m. Failed to use any front blocking, bracing, or restraint capable of stopping forward movement toward the container doors.

    n. Relied on side airbags or side dunnage without installing a front restraint or other securement that prevented forward movement and release when the container doors opened.

    o. Failed to unitize, stabilize, or otherwise secure the crates and pallets so they functioned as a stable load during transport and door opening.

    p. Failed to use securement methods that firmly secured the cargo and prevented shifting, as reflected in federal cargo securement standards.

    q. Failed to inspect or verify the adequacy of the blocking, bracing, and securement before releasing the container for transport.

    r. Failed to provide adequate instructions, warnings, or notice to downstream handlers that the cargo could have shifted and could eject upon door opening, and failing to advise any controlled door opening procedure.

    s. Created a concealed and unreasonably dangerous condition that an unloading worker could not discover by ordinary observation before opening the container doors.

    t. Was otherwise negligent in failing to exercise ordinary care under the circumstances.

74. One or more of these breaches caused the load to shift and eject when MOHAMMAD NASIR KOHISTANI opened the container door.

75. Defendant's breach caused MOHAMMAD NASIR KOHISTANI's injuries.

76. Defendant SUZHOU knew or should have known that improper securement can create a latent and concealed hazard that an unloading worker may not discover by ordinary observation before door opening.

77. To the extent any Defendant contends that a driver or handler should have inspected the cargo securement before transport or unloading, federal standards recognize circumstances where cargo inspection is impracticable for a sealed load. See 49 CFR 392.9(b)(4).

78. Ordinary care required Defendant SUZHOU to eliminate that hazard through proper loading and securement.

79. Defendant SUZHOU's negligent packaging, loading, and securement was a substantial factor in causing the load to shift and release when the doors opened and in causing MOHAMMAD NASIR KOHISTANI's injuries.

80. As a direct and proximate result of Defendant SUZHOU's negligence, MOHAMMAD NASIR KOHISTANI suffered severe and permanent injuries, incurred medical expenses, endured pain and suffering, and sustained other damages as described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, MENARD, INC., SHANGHAI LONGJIE PLASTICS CO., HARTFORD UNDERWRITERS INSURANCE COMPANY, and SUZHOU LANGJIAN PLASTIC TECHNOLOGY CO., LTD. jointly and severally, and award:

A. Compensatory damages for past and future medical expenses in an amount to be determined at trial;

B. Compensatory damages for past and future pain and suffering in an amount to be determined at trial;

C. Compensatory damages for past and future lost wages and diminished earning capacity in an amount to be determined at trial;

D. Compensatory damages for permanent disability, disfigurement, and loss of enjoyment of life in an amount to be determined at trial;

E. Pre-judgment interest pursuant to Wis. Stat. § 814.04;

F. Post-judgment interest at the statutory rate;

G. Costs and disbursements of this action pursuant to Wis. Stat. § 814.01; and

H. Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated this 27th day of February, 2026

Respectfully submitted,


By: */s/ Electronically signed by Steven T. Caya*
   Steven T. Caya, State Bar No. 1019596
   Evan B. Tenebruso, State Bar No. 1085063
   John P. Caucutt, State Bar No. 1130671

NOWLAN LAW LLP
100 S. Main Street
P. O. Box 8100
Janesville, WI 53547-8100
(608) 755-8100; FAX: (608) 755-8110
Attorneys for Plaintiff


By: */s/ Electronically signed by Sofia Zneimer*
   Sofia Zneimer, State Bar No.

ZNEIMER & ZNEIMER
4141 N. Western Ave.
Chicago, IL 60618
(773) 516-4100
Attorney for Plaintiff